No. 16-3238
Criminal

# In the United States Court of Appeals
# For the Eighth Circuit

UNITED STATES OF AMERICA,

APPELLEE,

v.

**REDACTED
COPY**

REX LEE FURMAN,

APPELLANT.

*Appeal from the
United States District Court for the
District of Minnesota*

**BRIEF OF APPELLEE**

Andrew M. Luger
*United States Attorney*
Michael L. Cheever
*Assistant U.S. Attorney*
*U.S. Attorney's Office*
*District of Minnesota*
*600 U.S. Courthouse*
*300 South Fourth Street*
*Minneapolis, MN 55415*
*(612) 664-5600*

Attorneys for Appellee

# SUMMARY OF THE CASE

Defendant Rex Furman was convicted after a jury trial of eighteen child pornography offenses. He was sentenced to life plus ten years' imprisonment.

Furman makes three claims on appeal. He contends evidence of his 1998 sexual assault of          was improperly admitted at trial. He next claims there was not enough evidence to convict him of counts 1 through 15 for distributing and producing child pornography. Finally, Furman argues the statute requiring a life sentence for counts 1 through 13 is categorically unconstitutional.

This case has been screened for oral argument. Nonetheless, the issues are adequately addressed in the parties' briefs, and no oral argument is necessary.

Appellate Case: 16-3238    Page: 2    Date Filed: 03/08/2017 Entry ID: 4509754

# TABLE OF CONTENTS

SUMMARY OF THE CASE.............................................................i

TABLE OF AUTHORITIES ..........................................................iv

STATEMENT OF THE ISSUES ....................................................1

STATEMENT OF THE CASE ........................................................2

I.     Factual Background. ....................................................................2

       A.     Furman's History as a Sexual Predator..........................2
              1.     The 1981 Wright County offense. ...........................2
              2.     The 1998 Hennepin County offense. .......................3

       B.     Furman's Collection of Child Pornography......................5
       C.     Furman's Receipt and Distribution of Child
              Pornography. ..................................................................9
              1.     Furman's use of peer-to-peer file-sharing
                     software...................................................................9
              2.     Furman's receipt of child pornography. .................12
              3.     Furman's distribution of child pornography...........14

       D.     Furman's Production of Child Pornography While
              Molesting .......................................................20
       E.     The February 13, 2014, Search Warrant and
              Interview of Furman.......................................................24
       F.     The September 18, 2014, Interview of Furman...............25
       G.     The September 29, 2014, Telephone Interview of
              Furman. .........................................................................29

II.    Procedural History......................................................................30

       A.     The Charges....................................................................30
       B.     The Rule 414 Evidentiary Rulings..................................33
              1.     The proffered evidence and the trial evidence........33
              2.     The District Court's preliminary ruling.................34
              3.     The District Court's trial rulings. ..........................35

       C.     The Trial and Verdicts....................................................37

Appellate Case: 16-3238     Page: 3     Date Filed: 03/08/2017 Entry ID: 4509754

D.  The Sentencing. ................................................ 38
   1.  Additional evidence for sentencing. ....................... 38
   2.  The sentencing hearing. ........................................ 41

SUMMARY OF THE ARGUMENT ................................................. 44

ARGUMENT ....................................................................... 47

I.  The District Court Did Not Abuse Its Discretion by
  Admitting Evidence of Furman's 1998 Sexual Assault
  Pursuant to Rule 414. ................................................ 47

  A.  Legal Framework. ................................................ 47
  B.  The Rule 414 Evidence Was Relevant and Not
   Unfairly Prejudicial. ............................................ 50
   1.  Relevance. ...................................................... 50
   2.  Unfair prejudice. ............................................ 52

II.  The Evidence Was Sufficient for the Jury To Convict on
  Counts 1 Through 15. ................................................ 53

  A.  Legal Framework. ................................................ 54
  B.  The Evidence of Furman's Distribution and
   Production of Child Pornography Was Sufficient. ............ 56
   1.  The distribution offenses, counts 14 and 15. .......... 56
   2.  The production offenses, counts 1 through 13. ....... 58

III.  The Mandatory Life Sentence of § 3559(e) Does Not Violate
  the Eighth Amendment. ............................................ 62

  A.  Legal Framework. ................................................ 62
  B.  Furman's Argument Has No Support in the Law. .......... 65

CONCLUSION. .................................................................... 68

CERTIFICATE OF COMPLIANCE ................................................. 68

ADDENDUM OF APPELLEE. ...................................................... 69

Appellate Case: 16-3238  Page: 4  Date Filed: 03/08/2017 Entry ID: 4509754

# TABLE OF AUTHORITIES

Cases

*Atkins v. Virginia*, 536 U.S. 304 (2002) .......................................... 1, 64

*Graham v. Florida*, 560 U.S. 48 (2010) .......................... 1, 63-64, 66-67

*Hope v. Pelzer*, 536 U.S. 730 (2002) ..................................................... 62

*Kennedy v. Louisiana*, 554 U.S. 407 (2008) ............................. 1, 64, 67

*Miller v. Alabama*, 132 S. Ct. 2455 (2012) ................................... 64, 66

*Robinson v. California*, 370 U.S. 660 (1962) ..................................... 63

*Roper v. Simmons*, 543 U.S. 551 (2005) ............................................ 64

*United States v. Bell*, 477 F.3d 607 (8th Cir. 2007) .......................... 54

*United States v. Bentley*, 561 F.3d 803 (8th Cir. 2009) ............ 1, 49, 51

*United States v. Bentley*, 475 F. Supp. 2d 852 (N.D. Iowa 2007) ....... 48

*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) ............... 1, 54

*United States v. Coutentos*, 651 F.3d 809 (8th Cir. 2011) ............. 49-50

*United States v. Crow Eagle*, 705 F.3d 325 (8th Cir. 2013) .............. 50

*United States v. Emmert*, 825 F.3d 906 (8th Cir. 2016) .............. 52, 65

*United States v. Gabe*, 237 F.3d 954 (8th Cir. 2001) ......................... 49

*United States v. Holy Bull*, 613 F.3d 871 (8th Cir. 2010) ................. 49

*United States v. Johnson (Scott)*, 639 F.3d 433 (8th Cir. 2011) ..... 1, 54

*United States v. Johnson (Robert)*, 474 F.3d 1044 (8th Cir. 2007) .... 55

*United States v. LeCompte*, 131 F.3d 767 (8th Cir. 1997) ........ 1, 48-49

*United States v. Luger*, 837 F.3d 870 (8th Cir. 2016) ....................... 53

Appellate Case: 16-3238    Page: 5    Date Filed: 03/08/2017 Entry ID: 4509754

*United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013) ..................... 65

*United States v. Strong*, 826 F.3d 1109 (8th Cir. 2016) ..................... 52

*Weems v. United States*, 217 U.S. 359 (1910) .................................... 63

Constitution and Statutes

United States Constitution amendment VIII ......................... 42, 62-67

Title 18, United States Code, Section 2251 ............................ 30-31, 33

Title 18, United States Code, Section 2252 .................................. 31-32

Title 18, United States Code, Section 2260A ................................... 32

Title 18, United States Code, Section 3553(a) ............................. 42-43

Title 18, United States Code, Section 3559(e) .......... 31, 33, 41-42, 45, 62-63, 65-67

Rules and Guidelines

Federal Rules of Criminal Procedure, Rule 29 ................................. 38

Federal Rules of Evidence, Rule 403 ............................... 33, 35, 47, 53

Federal Rules of Evidence, Rule 404(b) ..................................... 33, 48

Federal Rules of Evidence, Rule 414 ........................... 33-35, 44, 47-53

Federal Rules of Appellate Procedure, Rule 32 ................................. 68

United States Sentencing Guidelines, Section 4B1.5 ....................... 42

Appellate Case: 16-3238   Page: 6   Date Filed: 03/08/2017 Entry ID: 4509754

# STATEMENT OF THE ISSUES

I.  Did the District Court abuse its discretion by admitting limited evidence of Furman's conviction for sexually assaulting

> *United States v. Bentley*, 561 F.3d 803 (8th Cir. 2009)
> *United States v. LeCompte*, 131 F.3d 767 (8th Cir. 1997)

II. Viewing the evidence in the light most favorable to conviction, could a reasonable jury find Furman guilty of distributing and producing child pornography?

> *United States v. Johnson*, 639 F.3d 433 (8th Cir. 2011)
> *United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000)

III. Do all sentences under § 3559(e) violate the Eighth Amendment?

> *Graham v. Florida*, 560 U.S. 48 (2010)
> *Kennedy v. Louisiana*, 554 U.S. 407 (2008)
> *Atkins v. Virginia*, 536 U.S. 304 (2002)

1

## STATEMENT OF THE CASE

Defendant Rex Furman sexually abused prepubescent girls       over the course of 35 years:      in 1981,       in 1998, and       in 2012. Furman also took sexually explicit photos and a video of      in 2012, collected hundreds of other child pornography images, and shared images from his child pornography collection with others.

One of Furman's three claims on appeal is a challenge to the sufficiency of the evidence for 15 of the 18 counts of conviction. To assist the Court in addressing the sufficiency issues, only the facts presented at trial are discussed in the Factual Background subsection of this brief, unless otherwise indicated.

## I. Factual Background.

### A. Furman's History as a Sexual Predator.

#### 1. The 1981 Wright County offense.

In 1981, when he was eighteen, Furman sexually abused

[1] In October 1981, Furman was charged in

_____

[1]After trial, it was learned       lived with Furman and his father,

2

Wright County, Minnesota, with engaging in criminal sexual conduct in the first degree. In November, he pled guilty to engaging in criminal sexual conduct in the fourth degree. Furman admitted he touched genitals for his sexual gratification. Trial Transcript ("T") 364-65, 370-71, 379-80; Government Trial Exhibit ("Ex.") 206 (Addendum of Appellee ("Gov't Add.") A-15).

Imposition of sentence for the 1981 offense was stayed. As a conditional sentence, Furman was placed on probation for five years and required to serve a year in jail or in a treatment program. Ex. 206; *see also* PSR ¶¶ 6, 73; DCD 127 (adopting PSR).[2]

### 2. The 1998 Hennepin County offense.

In 1987, Furman                           T 366; Ex. 205; *see also* PSR ¶ 89.[3] When                    in 1998, Furman sexually assaulted

---

7/19/16 Presentence Investigation Report ("PSR") ¶¶ 6, 73.

[2]The District Court adopted the PSR without change but did not rely on the facts in the PSR to which Furman objected. 7/20/16 Sentencing Hr'g Tr. ("ST") 12. Furman objected to the factual statements regarding his sexual abuse of              and regarding his crimes in this case. PSR at A.3-A.4; DCD 115 at 4-5; *see* PSR ¶¶ 5-18, 76, 90-91.

[3]             is referred to variously in this case by her first name and by the initials            *E.g.*, PSR

3

her by inserting his finger into _____ vagina and by forcing her to perform oral sex on him.[4]  T 365-66, 371; Ex. 100 at 1 (Appendix of Appellee ("Gov't App.") 11a).

Furman was charged in Hennepin County, Minnesota, with engaging in criminal sexual conduct in the first degree.  He was convicted of the offense in January 1999 after a bench trial.  Furman was sentenced to 54 months' imprisonment and 10 years' conditional release.  T 337, 365-66, 379-80; Ex. 205 (Gov't Add. A-14); Ex. 300a at 12;[5] *see also* PSR ¶¶ 7, 76.

---

[4] ¶¶ 7, 89; T 366. For purposes of this brief, _____ is referred to as

_____ PSR ¶ 89.  Furman asserts he,

_____ Furman Br. 5.  There is no support for Furman's claim in the record.  *See* PSR ¶¶ 95-98, 100.

[5] Exhibits 300a, 302a, and 303a are audio recordings of interviews with Furman by law enforcement at the time a search warrant was executed on his house in February 2014 and, later, in September 2014. Gov't App. at 1a.  Transcripts of the recordings were not admitted at trial as exhibits, but were used to assist the jury.  *See, e.g.*, T 351.  The transcripts are included in the Appellee's Appendix at pages 150a, 177a, and 191a.  Pin cites in this brief for the three audio recording exhibits are to the transcript pages.

4

## B.     Furman's Collection of Child Pornography.

After his release from prison in November 2011, Furman was required to register as a sex offender until November 2021.[6] T 366-67; Ex. 100 at 3.  From the time he was released through October 2014, Furman lived in a rural area near the town of Federal Dam in north central Minnesota.  Ex. 100 at 4; Ex. 300a at 2-3.  His brother, Michael Furman, had property there with two houses in close proximity to each other.  Rex Furman lived in the smaller house, and Michael Furman lived in the main house along with his wife and three or four of their daughters.  T 319.

Rex Furman had internet access at his house and used it to pursue his interest in child pornography.  T 97-98; Ex. 198.  He downloaded numerous digital photos and videos of child pornography to two computers at his residence, an eMachines computer he used until the fall of 2013 and an HP computer he used from the fall of 2013 until both computers were seized by law enforcement in February 2014.  T 62-66; Exs. 108, 123, 703-1, 705-1 (Gov't App. 19a, 21a).

---

[6]Furman's final release from prison was not until 2011 due to several probation revocations.  PSR ¶ 76.

Appellate Case: 16-3238     Page: 11     Date Filed: 03/08/2017 Entry ID: 4509754

Furman's computers were password protected, and only Furman had access to them. Ex. 300a at 4.

Furman's collection included over 500 photos and over 100 videos of child pornography, that is, images of real minors engaging in sexually explicit conduct. *See, e.g.*, T 68-71, 153-54, 163-69, 309, 316; Exs. 1-16, 17a-17f, 166-1 to 166-17, 172-2 to 172-11, 200, 707-6 to 707-10. Furman also possessed numerous additional photos and videos that had file names suggesting they were, and that appeared to be, child pornography. *See, e.g.*, T 271; Exs. 158, 172-2 to 172-16. Furman admitted all the child pornography at his home was his and estimated his collection included about 5,000 images. Ex. 300a at 4-5, 24.

Furman's child pornography collection reflected his preference for pre-pubescent girls and his particular interest in incest-themed images. T 316, 342. He searched for child pornography using terms like "daddy daughter" and "incest." T 342; *see also* T 217, 222; Ex. 153 at 3; Exs. 154-155 (Gov't App. 30a, 32a); Ex. 300a at 11-12, 20. Child pornography files could be located in this way because their file names usually include descriptive terminology unique to child pornography images. *See, e.g.*, T 102-03.

6

Furman organized his child pornography collection diligently. T 270-71, 341. For example, he created separate folders for images of particular victims, for images of different sex acts, and for videos. *Id.*; Ex. 300a at 19-20. Furman stored many of the images on the hard drives of his computers and on computer discs and thumb drives. T 209-10, 245-50; *See* Exs. 152, 703-2, 705-2, 707-1, 708-1, 708-3, 711-4. Furman looked at files in his child pornography collection frequently. *See, e.g.*, T 229-30; Exs. 162-1, 162-2. In the three days before his computers were seized, for example, Furman looked at over two dozen of his child pornography photos and videos. Exs. 156-1, 162-1, 162-2.

Furman's child pornography collection included the following videos that were charged in count 17 of the superseding indictment:

a) ! New ! (Pthc) (Kinderkutje) 11YO Loli Levina.avi;
b) pthc daddy cum and lick daughter katy.mpg;
c) babyshivid daughter fucked compil (5).wmv;
d) (PTHC 2013 PTXX OPVA) 2012-08 4Yo Toddler Assfuck (4m 16s).avi;
e) (pthc) beautiful fuck little girl! mpg (1).mpg; and
f) (yamad) hussyfan(pt)`_`1hannah-forced h319(2).mpg

7

T 209-12; Exs. 17a-17f.[7]  It also included one video and twelve photos of the vagina and anus of                                                    Exs. 1-13 (charged in counts 1-13, 17-18).

The first of these files is a video that is over five minutes long. It shows a pre-pubescent female, who appears to be about eleven years old and is naked from the waist down, masturbating on a bed.  For the next several minutes of the video, an adult male alternates between having the victim perform oral sex on him, penetrating the victim's vagina with his penis, and digitally penetrating her vagina.  The video ends with the adult male ejaculating on the victim's face.  Ex. 17a. Furman had most recently watched the video on January 29, 2014, about two weeks before his computers were seized by law enforcement. T 233-34; Ex. 156-3 at 3 (12/31/13); Ex. 162-2 at 3 (1/29/14).

The second, third, fourth, and fifth videos are between one and four minutes long, and each shows an adult male penetrating the vagina, anus, or both of a prepubescent girl between five and eight years old with his penis.  T 211; Exs. 17b-17e.  Furman watched the

---

[7]"Pthc" stands for "pre-teen hard core."  T 102.

Appellate Case: 16-3238    Page: 14    Date Filed: 03/08/2017 Entry ID: 4509754

fourth and fifth videos, exhibits 17d and 17e, on February 2, 2014, eleven days before his computers were seized.  T 235-36; Ex. 157-1 at 3.

The sixth video is about 30 seconds long and shows an adult male using his fingers to spread the labia of a prepubescent 10-year-old girl. T 211; Ex. 17f; *see also* PSR ¶ 17.  Like the sixth video, eleven of the twelve photos and the video Furman produced, also charged in count 17, show Furman spreading the labia or buttocks of

Exs. 2-13.

## C. Furman's Receipt and Distribution of Child Pornography.

### 1. Furman's use of peer-to-peer file-sharing software.

Furman downloaded and distributed child pornography through "peer-to-peer" file-sharing networks.  Ex. 300a at 6.  These file-sharing networks do not operate through a central computer that could be shut down by law enforcement.  Instead, computers of individual users are linked together in a network that allows each user to download files from other users on the network through peer-to-peer file-sharing software.  *See* T 79-90, 307; Ex. 165 at 35 (Gov't App. 89a); Ex. 167. There are several different file-sharing networks, each of which can be

9

accessed through more than one type of file-sharing software. Each network is, in effect, a protocol or a language used to connect different computer users through file-sharing software that is designed for that particular protocol.

Furman used at least three different software programs to access at least three different peer-to-peer file-sharing networks and to download and share child pornography. T 338, 376-77; Ex. 300a at 6. He first used Kazaa file-sharing software that gave him access to the Kazaa file-sharing network. T 143; Ex. 300a at 6, 9, 19.

From at least December 2012 until August 2013, Furman used Ares 2.1.9 file-sharing software on his eMachines computer, which allowed him to access the Ares file-sharing network. T 190-92, 306, 310. Furman selected a folder he created himself to download files from other Ares network users and to share his files on the Ares network. T. 193-94; Ex. 153 at 2 (Gov't App. 28a). Furman used dozens of child pornography search phrases to find child pornography on the Ares file-sharing network that suited his tastes. The search phrases included "pthc collector," "pthc sister," and "(pthc)6yr girl." T 217; Ex. 154; *see also* Ex. 300a at 11-12.

Appellate Case: 16-3238    Page: 16    Date Filed: 03/08/2017 Entry ID: 4509754

From at least October 2013 through February 2014, Furman used LimeShare Pro file-sharing software on his HP computer, which gave him access to the Gnutella file-sharing network. T 110, 143. The Ares and Gnutella file-sharing networks operated similarly to one another. T 306-07.

Furman bought his HP computer new, and he kept his older, eMachines computer unplugged next to his bed. Ex. 108; Ex. 300a at 5, 13-14. Furman first installed version 2.5.0.0 of the LimeShare Pro file-sharing software onto his HP computer. T 76-77, 127, 147-49, 173, 194-95; Ex. 168 at 2; Ex. 170 at 2. In November 2013, Furman installed an update for his LimeShare Pro software, version 2.6.0.0. T 127, 147-49, 173, 194-95; Ex. 170 at 2. To install the LimeShare Pro file-sharing software, Furman was required to answer questions regarding sharing his files with other users. T 127-33; Ex. 165 at 13-19. One step required Furman to choose the folder where the files he downloaded would be saved and advised him this would be the same folder from which other Gnutella users could upload files from Furman's computer:

Appellate Case: 16-3238   Page: 17   Date Filed: 03/08/2017 Entry ID: 4509754



Ex. 165 at 13 (cropped)

T 131-32, 135; Ex. 165 at 13; *see also* T 199-200; Ex. 160 at 1-2.

On his HP computer, Furman chose to download files into, and share files from, the file-sharing software's default folder on his C-drive called "Shared." T 174, 199; Ex. 160 at 2. Whenever his computer was running the LimeShare Pro program, every other Gnutella user could upload files from Furman's Shared folder. T 137, 174-177, 271-72.

### 2. Furman's receipt of child pornography.

Furman used his LimeShare Pro software often, and he kept the software running for days and weeks at a time. *See, e.g.*, T 156-71, 338, 392-93, 396-97; Exs. 171, 172-1 (Gov't App. 132a, 145a). He downloaded hundreds of child pornography images from the Gnutella file-sharing network into his Shared folder. *See, e.g.*, Exs. 172-2 to 172-16.

Appellate Case: 16-3238    Page: 18    Date Filed: 03/08/2017 Entry ID: 4509754

On December 2, 2013, Furman downloaded a nearly 2-minute video from the Gnutella file-sharing network with the file name "13yr + sis(Hussyfan) (pthc) (r@ygold) (babyshivid) 109 Pedofilia 13yr dad.mpg" ("the count 16 video"). T 205-07; Ex. 16 (charged in count 16); 151. The video shows an adult male having vaginal intercourse separately with two young females who appear to be about 13 years old or younger. Multiple instances of vaginal penetration of each victim by the adult male are shown. Ex. 16; *see also* PSR ¶ 11.

Furman previewed the count 16 video while he was still downloading it from the Gnutella network. He then watched the video a second time after it was fully downloaded into his Shared folder. At some later point in time, after placing the file into a personal, unshared folder, Furman watched the video at least once more. T 200, 206-09, 230-36; Exs. 151 (Gov't App. 26a); 156-2 at 3 (Gov't App. 37a).

During his 2014 interviews with law enforcement, Furman claimed he did not know possessing child pornography was illegal. T 391; Ex. 300a at 1, 17. Despite this professed lack of knowledge, Furman gave several false explanations for downloading child pornography. Furman first said most of the child pornography he had

13

was "art." *Id.* at 1; *see also* T 322, 344; Ex. 300a at 20. He then claimed he downloaded child pornography in an effort to find images taken of _____ when she was a child, so he could find the person who posted the images. T 337-39; Ex. 300a at 7-8, 11, 18-19, 21-22. Furman also claimed he intended to give his local police department a disc of child pornography he had downloaded so the people distributing it could be brought to justice. T 344; Ex. 300a at 22. He did not do so. T 344. Ultimately, Furman admitted he was sexually aroused by images of child pornography. T 375; Ex. 300a at 22.

### 3. Furman's distribution of child pornography.

**a. The BCA and FBI downloads.** Furman kept a large enough number of child pornography files in his shared folders for long enough periods of time to draw the attention of two separate law enforcement agencies. During 2013, both the Minnesota Bureau of Criminal Apprehension ("BCA") and the FBI conducted criminal investigations into child pornography distribution in Minnesota. Each agency used special law enforcement software to search file-sharing networks to find people who used their computers to share child

14

pornography. T 92-94, 308. Each agency identified Furman as such a person.

Special Agent David Giguere worked in the Predatory Crimes Section of the BCA. On August 23, 2013, he used law enforcement software to identify Minnesota computer users who were making at least 11 items of child pornography available for others to download on the Ares file-sharing network. T 306, 310. Furman was identified as such a user. Giguere then downloaded two child pornography videos Furman was sharing from Furman's eMachines computer. T 311; Exs. 175 (demonstrative), 177 (Gov't App. 146a, 147a).

One of the files Agent Giguere downloaded from Furman's computer was called "1(2)(3)(2).mpg" ("the count 15 video"). T 311-12; Ex. 15 (charged in count 15). The video is almost four minutes long. A still photo at the beginning of the video shows the victim, a girl who appears to be about five years old, wearing a Little Red Riding Hood outfit and performing oral sex on an adult male. Toward the beginning of the video, an adult female shows the girl adult and child pornography. The adult female then removes the victim's underwear, masturbates the victim's vagina, and performs oral sex on the victim.

15

The victim is also shown seated on the lap of an adult male who is naked from the waist down. The adult male uses one hand to guide the victim's hand up and down on his penis while he touches the victim's vagina with his other hand. The adult male then rubs his penis against the victim's vagina. At the end of the video, the victim performs oral sex on the adult male. T 315-16; Ex. 15; *see also* PSR ¶ 9. When he was asked about the count 15 video on February 13, 2014, Furman said he remembered seeing it. T 345-46; Ex. 300a at 25.

In 2013 and 2014, Minneapolis Police Officer Dale Hanson was assigned to the FBI's child exploitation task force. T 73. From October 15, 2013, until January 30, 2014, Hanson used law enforcement software to search various file-sharing networks for child pornography, including the Gnutella file-sharing network. T 91-92, 153-55. During that time, Hanson downloaded 18 child pornography images from the Shared folder on Furman's HP computer through the Gnutella file-sharing network. T 100, 105-06, 151-55; Exs. 14, 166-1 to 166-17; Ex. 169 (Gov't App. 130a). Furman still had at least eight of these photos on his HP computer when it was seized by law

Appellate Case: 16-3238    Page: 22    Date Filed: 03/08/2017 Entry ID: 4509754

enforcement on February 13, 2014. T 201-04; Ex. 150 (Gov't App. 25a; Ex. 158 at 9, 23, 26, 38, 42, 44, 46 (Gov't App. 41a).

One of the files Officer Hanson downloaded from Furman's Shared folder was named "Private Daughter Mellony stolen pedo Lolita pthc hussyfan preteen nude (10yo) 01(1).jpg" ("the count 14 photo"). T 103; Ex. 14 (charged in count 14). Hanson downloaded it on December 30, 2013, and the count 14 photo remained in Furman's Shared folder until at least January 4, 2014. T 94-106, 149-50, 201-04; Ex. 171 at 6; Ex. 172-13 at 4; Ex. 172-14 at 4; Ex. 172-15 at 4; Ex. 173. Two copies of the file were still on Furman's HP computer on February 13, 2014. T 243-44; Ex. 150; Ex. 158 at 42, 46. The count 14 photo shows a naked pre-pubescent female sitting in an arm chair with her legs spread and her vagina visible. Each of the girl's legs has the thigh and shin tied together with a rope with the knee fully bent. The girl's left arm is tied to her left leg and her right arm is tied to her right leg. T 151-52; Ex. 14; *see also* PSR ¶¶ 10, 15; Exs. 166-1 to 166-17.

**b. Furman's knowledge.** Furman knew how file-sharing networks operated. Among other things, he admitted in a February

Appellate Case: 16-3238    Page: 23    Date Filed: 03/08/2017 Entry ID: 4509754

13, 2014, interview that he knew other users could obtain child pornography from his shared folders. Furman explained: "[Y]ou got a share file on the com, on the program. When you download if you don't take it outta the share file it shares it back . . . ." Ex. 300a at 10; *see also id.* at 17-18. Furman nonetheless asserted repeatedly that he did not distribute child pornography. T 322, 336, 391; Ex. 300a at 2, 8, 17.

To explain the apparent inconsistency between his knowledge of how file-sharing networks operate and his claim that he did not distribute, Furman said he tried to minimize his distribution of child pornography by quickly moving the files he downloaded to non-shared folders on his computer and deleting them from his shared folder. He claimed, "I don't leave it in the shared folder long enough for the . . . . I cut everybody off *usually*." T 338, 377, 392; Ex. 300a at 10 (emphasis added); *see also* Ex. 300a at 25 ("I pull 'em off [of others' shared folders] and I delete 'em.").

Contrary to his claim, Furman left child pornography files in his Shared folder for days and weeks at a time while his file-sharing

18

program was running. *E.g.*, T 396-97; Ex. 171; Exs. 172-1 to 172-16.[8] Furman downloaded large numbers of child pornography files into his Shared folder and then went through them, one at a time, to see which ones he wanted to keep in his collection and what part of his collection he wanted to store them in. Ex. 300a at 8 ("I delete it off the . . . shared folder and put it into another folder."); *id.* at 19 ("I usually download all of it then I file it."). Furman therefore saw the files he was sharing on the file-sharing network each time he looked at the file list in his shared folder to choose a file to review and sort. T 140.

Even when he removed files from his shared folder, Furman left other child pornography files in it. T 183. On August 23, 2013, Furman had at least 11 child pornography files in the shared folder of his eMachines computer. T 310-11. He appeared to keep between 4 and 136 child pornography files in the Shared folder of his HP

---

[8]Exhibits 171 and 172-2 to 172-16 do not show every time Furman had child pornography available to others in his Shared folder. Exhibit 171 shows only the dates the 18 files downloaded by Officer Hanson were available. T 154-58. Exhibits 172-2 to 172-16 show only the dates Officer Hanson chose to connect directly to Furman's computer. T 165, 169-70.

Appellate Case: 16-3238    Page: 25    Date Filed: 03/08/2017 Entry ID: 4509754

computer from October 15, 2013, through January 30, 2014.  Ex. 172-1.

Furman admitted having some advanced technical skills for using file-sharing software.  For example, when searching for child pornography on file-sharing networks, Furman knew how to look beyond the files he found using search terms to see all the files other Gnutella users had available in their shared folders.  T 89-90, 339, 346; Ex. 167 at 3 (demonstrative); Ex. 300a at 11, 19, 25-27; *id.* at 26 ("[Y]ou can pretty much take everything.").  Furman preferred searching for files using this technique.  *Id.* at 25 ("I'll take somebody's whole file.").

### D.  Furman's Production of Child Pornography While Molesting

While Furman served his sentence for sexually abusing

Furman was released from prison in November 2011 and moved onto his brother's property near Federal Dam, Minnesota.  T 367.  In August 2012, Furman brought , to live with him.  She was just about .  T 369; Ex. 302a at 9 ("I brought her up here for . . . .").  About a month later, in late September or early

20

October,                                                 moved in with Furman.
The

Id.; T 274-75, 369; Ex. 24 (Gov't App. 8a).[9]

On August 26, 2012, at about 6:00 p.m., Furman took three non-pornographic photos of           T 251-52; Exs. 32-34 (Gov't App. 10a); Ex. 159.  They were at Michael Furman's house for                      ,

Four hours later, at about 10:00 p.m. that night, Furman took a 4-second close-up video and four close-up photos of the vaginal area of               while she was in his bedroom.  T 252-53, 356; Exs. 9-13 (charged in counts 9-13 and 17-18); Ex. 152 (Gov't App. 27a); Ex. 159; Ex. 302a at 3.  Furman intended to take only photos, but he initially had his camera on the video setting by mistake.  E.g., Ex. 302a at 2.  Each of the four photos shows Furman's fingers spreading the girl's labia apart.  The victim in

---

[9]Furman incorrectly claims his brothers-in-law (perhaps meaning his brother's in-laws) were staying with him during this time. Furman Br. 8.  There is no evidence showing anyone other than          lived with Furman from August 26 to September 3, 2012, or that anyone other                      lived with Furman later in September or in October 2012.

Appellate Case: 16-3238     Page: 27     Date Filed: 03/08/2017 Entry ID: 4509754

the photos is very likely     , but Furman's subsequent statements indicate he took such photos of     as well.

Furman's digital Sony camera automatically assigned file names to its photos using sequential numbers. The photos of     taken at 6:00 p.m. on August 26 were numbered DSC00022 through DSC00024. T 251-52; Exs. 32-34, 152, 159. The child pornography photos of     four hours later were numbered DSC00025 through DSC00028. Exs. 9-12, 152, 159. Furman removed the mini-DVD with these images from his camera before taking any more photos. Ex. 708-3. When Furman inserted a new mini-DVD, the camera continued its numbering sequence. Ex. 708-1.

The next photos Furman took were a week later on September 3, 2012, from 12:23 to 12:27 a.m. Ex. 152, 159. Furman took twelve photos of     as she lay in a cushioned chair in Furman's home. T 253-56, 361-62; Exs. 1-8 (charged in counts 1-8 and 17-18); Exs. 18-21. The Sony camera numbered them DSC00029 through DSC00040. Exs. 1-8, 18-21, 152, 159.

The first September 3 photo is a close-up of     genital area with her underwear on. Ex. 18. The next three photos show

22

face as she appears to be sleeping.  Exs. 19-21.        is "posed" in the third photo, with at least one knee bent and spread to the side.  T 362; Ex. 20 (Gov't App. 7a).  In the fifth photo,        underwear is pulled back to expose her vagina.  Ex. 1.  After a 45-second pause, during which Furman removed        underwear, he took seven more photos over the course of a minute and a half.  Ex. 159.  Six of those photos show close-ups of        vaginal area with Furman's fingers spreading open her labia.  Exs. 2-4, 6-8.  The other photo is a close-up of        anal area with Furman's fingers spreading her buttocks apart.  Ex. 5.

       had just turned four.  T 353.

     Furman kept the two mini-DVDS with the child pornography images he created in his bedroom, together with the other images of child pornography he stored there.  T 68, 246; Exs. 122, 130, 711-4 (Gov't App. 20a).  Furman still had the mini-DVDs a year and a half later, when they were seized by law enforcement.  T 71.

                               removed from Furman's home in March 2013, five months before the BCA and FBI began investigating Furman.  T 278.                        were placed in foster care, and a

23

child protection social worker was assigned to work with them.  T 274-75, 394.

### E.     The February 13, 2014, Search Warrant and Interview of Furman.

Based on the undercover downloads of child pornography from Furman's computer, law enforcement officers executed a search warrant for his residence on February 13, 2014.  T 56, 317-24.  As the officers entered the house and announced they were executing a search warrant for child pornography, Furman said he had some on his computer.  T 322.  He also asserted he was not sharing his child pornography and added "some of it is art."  T 322.

After the scene was secured, Agent Giguere and a second BCA officer, Special Agent Kate Booth, interviewed Furman in his living room and recorded the interview.  T 322-24; Ex. 300a.  As the interview was taking place, other officers took photos of Furman's home and seized evidence, including Furman's two computers and his computer storage devices.  T 322-24.

After the interview was concluded, and as the officers were leaving with the evidence, Furman told Agents Giguere and Booth that the other officers were taking CDs on which the agents would find

24

either pictures or a video of Furman and          applying medicine to

          for a yeast infection.  T 347-49, 378-79; *see also* Ex. 302a

at 1.  Furman added that they took the pictures or video to "cover our

asses."  T 348.

**F.    The September 18, 2014, Interview of Furman.**

In their initial review of the seized evidence, BCA investigators

did   not   find   the   images   Furman   said   were   taken   of   his

          T 245, 269-70, 349.  On September 18, 2014, Agents

Giguere and Booth interviewed Furman a second time and recorded

the interview.  T 350-56; Ex. 302a.

Agent Giguere started the September 18 interview by asking

Furman about his February statement when Furman said he

          took pictures or a video of                    Furman interrupted

Giguere when he mentione          ole, saying:

          took pictures of                    for documentation purposes

because of          ."  Ex. 302a at 1.  When asked                    took the

photos, Furman backed off the claim and said it was          who took

the photos.  *Id.*  Furman later seemed to admit either he was the one

25

taking the pictures or he did not remember who took them.  T 354; Ex.

302a at 5, 6.

Furman said his

, had been accused of molesting                      nd either he or

ook photos of his                      vaginal areas to "document"

that there was no damage to the girls' genitals.  T 382; Ex. 302a at 3-

8, 13.  Furman said the photos were of both                      and they

were close-ups of the girls' genitals.  Ex. 302a at 3-8.  Furman said he

and            were not applying any medicine to the girls' vaginas.  T

354; Ex. 302a at 4.  Furman stated they took both girls to their regular

clinic in Remer, Minnesota.  Ex. 302a at 7-8, 10.  Furman claimed he

told the doctor that Furman and            believed            had "been after

'em," and the doctor said the girls looked fine.  Ex. 302a at 7-8; *see also*

*id.* at 13-14.

After listening to Furman's assertion that he                took the

photos because of allegations of sexual abuse by

, Agent Booth reminded Furman that seven months earlier

he said the girls had a yeast infection and the photos were taken for a

different purpose.  T 355; Ex. 302a at 8.  Furman initially responded

26

that the photos were not related to applying medicine to his
Ex. 302a at 8-9.  Furman then said yeast infections
and that they had one of his                              checked
for a yeast infection at the same time she was seen at the clinic in
Remer because of suspected abuse by            Ex. 302a at 11.  Furman
also told the agents his 1998 charge of assaulting         , when she
was       , involved a misunderstanding because Furman was only
applying medicine to her vagina for a yeast infection.  Ex. 302a at 11.

The only local doctors that treated the girls in 2012 each testified
the girls were never seen for, or treated for, a vaginal infection or for
any other issues with their genitals.   T 275-77, 284-91, 298-301.
Neither doctor ever asked

and neither doctor asked for any such photos of                    T
288, 301-02.

During the September 18 interview, Furman provided specific
details about the photos that had been taken, but which the officers
had not yet found.  Furman thought one short video and about five
photos were taken.  Ex. 302a at 5, 12.  He said his "two-in-one" camera
was used to take the video and the photos.  Furman estimated the

Appellate Case: 16-3238    Page: 33    Date Filed: 03/08/2017 Entry ID: 4509754

video was 3- to 4- seconds long and said the camera was mistakenly set to record a video instead of to take pictures. Ex. 302a at 2, 12. At one point, Furman said he was the one who "hit the wrong button" when the video was taken. T 354; Ex. 302a at 5. Furman also indicated there were six mini-DVDs seized by the officers in February 2014 and the photos were on two of the mini-DVDs. T 353-54, 356-57; Ex. 302a at 4 ("You took 'em both."). Furman said the photos were all taken at the same time. Ex. 302a at 5.

Furman said the pictures were taken shortly after        moved in with him, when                              Ex. 302a at 3, 7.[10]  He also said there were photos of                              on the same mini-DVD with the close-up photos of                              vaginas, referring to the photos of        taken four hours earlier on August 26. Exs. 31-34; Ex. 302a at 12; Ex. 303a at 1-2. Furman said the photos were taken in his bedroom. T 353; Ex. 302a at 3.

_____

10

video and photos were taken and just before        were taken. T 353.

Appellate Case: 16-3238    Page: 34    Date Filed: 03/08/2017 Entry ID: 4509754

### G. The September 29, 2014, Telephone Interview of Furman.

The BCA investigators located two mini-DVDs matching Furman's description of the images he produced, or at least helped produce. T 356-57; Ex. 303a at 1. Thereafter, on September 29, 2014, Agent Giguere interviewed Furman over the telephone and recorded the interview. T 356; Ex. 303a.

Agent Giguere described to Furman the images on the mini-DVD with images taken on August 26, 2012. Ex. 708-3; Exs. 9-13, 31-34. He first described the           photos to Furman. T 358-59; Ex. 303a at 2-3. Giguere then described the first photo of a vagina as "real dark" and "very close up." Ex. 9; Ex. 303a at 3. Furman remembered the photos did not turn out very well. *Id.* Giguere told Furman the photo showed Furman's thumb spreading open the vagina, and Furman said "[t]hat would've been         " *Id.* Furman said he remembered the photos were taken in the evening and that it could have been around 10:00 p.m. Ex. 303a at 3-4.

Agent Giguere then asked Furman about the second mini-DVD, with photos taken on September 3, 2012. Ex. 708-1; Exs. 1-8, 18-21. Furman said he did not recall taking the September 3 photos. Ex.

Appellate Case: 16-3238    Page: 35    Date Filed: 03/08/2017 Entry ID: 4509754

303a at 4-6. Furman suggested "one of those girls" might have been playing around with the camera or something." Ex. 303a at 6. Giguere told Furman the fingers in the September 3 photos looked like a man's, and Furman responded: "I might have, I admit one, I might have reached down, I'm not sure. But, yeah. All they was, uh, like I said, uh, documentation [unintelligible] . . . for the report." T 382-83, 389-90; Ex. 303a at 7.

## II. Procedural History.

### A. The Charges.

Furman was charged by indictment on October 7, 2014, with 18 child pornography offenses. DCD 1. He was arrested on October 22 and detained. DCD 5, 7, 9. Shortly before trial began in October 2015, a superseding indictment was filed.

Counts 1 through 13 charged Furman with producing child pornography in violation of 18 U.S.C. § 2251(a). Counts 1 through 8 related to the photos Furman took of ____ on September 3, 2012. Exs. 1-8. Counts 9 through 13 related to the video and photos Furman took of either ____ on August 26, 2012. Exs. 9-13. Senior District Judge David Doty presided over the case.

30

Each of counts 1 through 13 required a sentence of imprisonment of 15 to 30 years. The term of imprisonment could be enhanced under two different statutes. Under § 2251(e), the term of imprisonment could be 25 to 50 years based on one prior conviction for certain offenses involving the sexual abuse or exploitation of a minor, and it could be 35 years to life based on two such prior convictions. Under 18 U.S.C. § 3559(e), the sentence of imprisonment could be enhanced to a mandatory life term based on one prior felony conviction for certain sexual offenses involving a minor. The enhancement under § 3559(e) requires a more serious predicate crime than do the enhancements for § 2251(e).

Counts 14 and 15 charged Furman with distributing child pornography in violation of 18 U.S.C. § 2252(a)(2).[11] Count 16 charged Furman with receiving child pornography in violation of the same statute. Counts 14 through 16 each required a sentence of imprisonment of 5 to 20 years. 18 U.S.C. § 2252(b)(1). The term of

---

[11]Count 14 erroneously used the date of October 15, 2013, rather than December 30, 2013. The error was addressed prior to trial by stipulation, and the jury was correctly instructed. T 3-4, 523.

Appellate Case: 16-3238    Page: 37    Date Filed: 03/08/2017 Entry ID: 4509754

imprisonment could be enhanced to 15 to 40 years based on one prior conviction for a child sex abuse or exploitation offense. *Id.*

Count 17 charged Furman with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). It was based on Furman's possession of the photos and video that were also charged in the production counts, 1 through 13, and on Furman's possession of six other videos of child pornography. The offense provided for a sentence of imprisonment of up to 20 years that could be enhanced to require a 10-year minimum term of imprisonment based on a prior conviction for a child sex abuse or exploitation offense. 18 U.S.C. § 2252(b)(2).

Count 18 charged Furman with producing child pornography, while he was a registered sex offender, in violation of 18 U.S.C. § 2260A. It was based on the offenses charged in counts 1 through 13 and required a ten-year term of imprisonment that must run consecutively to the sentences for those underlying offenses.

The government notified Furman it was seeking the maximum enhanced penalties for each of counts 1 through 17 based on his two prior convictions for sexually assaulting a minor. DCD 1, 69. It recognized, if Furman was convicted of the production counts, 1

32

through 13, the mandatory life requirement of § 3559(e) would trump the 35-year statutory minimum of § 2251(e).  DCD 69 at 2 n.3.

## B.    The Rule 414 Evidentiary Rulings.

Furman's jury trial began in October 2015.  The government filed a motion in limine seeking to present very limited evidence of Furman's 1981 and 1998 sexual assaults under Rules 404(b) and 414.  DCD 63.  Furman filed a motion in limine seeking to exclude all of the evidence pursuant to Rule 403.  DCD 53.  The District Court granted the government's motion.  At trial, the government, on its own, chose to introduce even less Rule 414 evidence than was permitted.

### 1.    The proffered evidence and the trial evidence.

With respect to Furman's 1981 sexual assault of his                    the government sought to introduce evidence that Furman put his penis in the victim's mouth, anus, and vagina and that a physical examination of the victim found tenderness in her anus.  DCD 63 at 6; DCD 63-1; *see also* PSR ¶ 6.  Instead the government limited the evidence it presented at trial to Furman's admission that he touched          genitals for his sexual gratification.  T 364-65.

With respect to Furman's 1998 sexual assault of                    , the government asked the District Court to allow it to

33

introduce evidence showing: (1)         told an adult neighbor, and then police, that                  was sexually abusing her; (2)      told police Furman had been sexually abusing her by digitally penetrating her vagina and forcing her to perform oral sex on him to completion; and (3)      further explained to police that

       had been sexually assaulting her about once a week for some time, most recently about a week before the interview. DCD 63 at 6-7; DCD 63-2. At trial, evidence of sexual assaults by

was not introduced, Furman's ejaculation during the oral sex was not mentioned, and the duration of the assaults was limited to a single episode. T 365-66.

### 2. The District Court's preliminary ruling.

On October 14, 2015, five days before trial began, the District Court held a pretrial conference to address, among other issues, the parties' motions in limine regarding the Rule 414 evidence. 10/14/15 Pretrial Hr'g Tr. ("PT") 4-12. The District Court easily determined the fact that Furman had been convicted of the two offenses would be admitted under Rule 414. PT 7. The District Court then turned to the question of "how much of the details of those two cases" the

34

government intended to offer. The government wanted to make sure evidence was admitted regarding the age, gender, and familial relationship of the victims in the two cases, as well as the type of sexual contact involved. PT 8-9, 12. The District Court urged government counsel to work with defense counsel to "see how much of that detail can be cut down." PT 9-10.

The District Court made a Rule 403 determination, finding the Rule 414 evidence was admissible:

> [T]he balance goes in favor of allowing the substantive evidence in and overcomes any prejudice that Mr. Furman might have. You know any evidence like this is very prejudicial, no doubt about it. The question is whether it's unfair prejudice, and in this case I don't believe it is and, therefore, with a Rule 403 analysis I think lends to having the 414 evidence received and seen by the jury.

PT 11. The District Court recognized its Rule 414 and 403 rulings were "tentative rulings." PT 6. It issued a written order prior to trial reiterating the preliminary rulings. DCD 80 at 5-7 (Gov't Add. A-1).

### 3. The District Court's trial rulings.

The government and Furman did not agree on the scope of Rule 414 evidence that could be admitted at trial. Furman conceded in his opening statement, however, that he was a registered sex offender in 2012 because he pled guilty to "an offense" in 1981 and had been

35

convicted of "molesting _____ in 1998. T 50. The government, on its own, offered only the limited facts regarding the prior convictions discussed in the Factual Background subsection of this brief. T 364-67; Exs. 100, 205-206. For each conviction, the evidence was limited to a copy of the judgment of conviction and testimony narrowly describing the age, gender, and familial relationship of the victims and the type of sexual contact involved. T 364-67. Furman maintained his objection to the admission of any evidence of either prior conviction. T 18, 363. The District Court overruled the objections. T 18, 363.

In its final instructions, the District Court advised the jury it could consider the evidence of Furman's prior convictions for any relevant purpose. T 514-15; DCD 87 at 12. It cautioned the jury that Furman was "not on trial for any act or any conduct not specifically charged in the indictment" and later reminded the jury: "[T]he defendant is on trial only for the crimes charged. You may not convict a person simply because you believe he may have committed similar acts in the past." DCD 87 at 7, 12. The District Court further

instructed the jury not to be "persuaded by bias, prejudice, or sympathy for or against any of the parties." DCD 87 at 2.

## C. The Trial and Verdicts.

Furman proceeded to trial on all 18 counts. He conceded in his opening and closing statements that he was guilty of possessing child pornography as charged in count 17. T 50, 51-52, 491. Furman did not concede his guilt on the count 16 charge of receiving child pornography, which carried the same penalties as the distribution charges, but his defense was focused on the distribution and production counts. Furman Br. i, 3, 12; T 50-51. Furman did not dispute that the files charged in counts 14 and 15 were downloaded from his computers, but he argued his distribution of the files was not done knowingly. T 52, 497-98. Furman denied taking the video and photos charged in counts 1 through 13, and asserted the video and photos he described to Agent Giguere were not the same images charged in those counts. T 495-96.

The government rested its case in the morning of October 21, 2015. Furman rested without putting on any additional evidence and

Appellate Case: 16-3238   Page: 43   Date Filed: 03/08/2017 Entry ID: 4509754

moved for a judgment of acquittal. The District Court took the Rule 29 motion under advisement. T 540-41.

The jury received the case at the end of the day on October 21. DCD 82, 84-85. The next morning, the jury found Furman guilty of all eighteen counts. DCD 89. A day later, the District Court issued a written order denying Furman's Rule 29 motion. DCD 92 (Gov't Add. A-12).

### D.    The Sentencing.

#### 1.    Additional evidence for sentencing.

Prior to sentencing, the District Court received additional evidence of Furman's 1998 offenses, of his sexual assaults of and of the impact his crimes had on his direct victims and the indirect victims depicted in the child pornography he possessed and distributed.

Furman's sexual assaults of                    began when she was very young. Two separate instances of sexual abuse were investigated when she was                    including an instance when a salt shaker was stuck in          vagina for over a day. PSR ¶ 90. More allegations of sexual abuse by Furman, as well as improper picture-taking by him, were raised when                    and a

38

guardian ad litem was appointed for                                    . PSR

¶ 91.  Furman sexually assaulted            about once a week from the

time she was about                                    .  PSR ¶ 7, 76.

The abuse came to light when            complained she was being

sexually assaulted by                    PSR ¶¶ 76, 89.

After serving his initial jail term imposed for the Hennepin County conviction, Furman's probation was revoked four times from 2007 through 2010, with additional jail terms imposed totaling almost three years.  One of the violations was based on Furman's improper contact with a 2-year-old girl, which appeared to be sexual in nature. PSR ¶ 77.  Other violations included refusing to participate in sex-offender treatment and failing to disclose where he was living.  *Id.*

Furman sexually assaulted                    multiple times from August 2012 through March 2013, when they were removed from his home.  PSR ¶¶ 8, 83.

was present for some of the sexual assaults and intervened to help

            on at least one occasion.  PSR ¶¶ 8, 83; DCD 64-1, 64-

2.  In October 2015, Furman was charged in Minnesota state court with numerous sexual assaults and other crimes against

39

PSR ¶¶ 60, 83. The case was still pending when Furman was sentenced in this case.

participated in therapy sessions beginning in March 2013, when they were removed from Furman's home and placed in foster care. *E.g.*, DCD 64-1, 64-2, 116-1, 116-2.

Furman's child pornography collection included digital photos of 130 child victims who were identified and videos of 22 such victims. PSR ¶ 18. Eight of these victims submitted victim impact statements to the Department of Justice, and their statements were included in Furman's PSR at pages 6 to 19.

Two of the videos charged in count 17, exhibits 17d and 17e, were part of the "Tara series." The mother of the Tara series victim, who was about 5 years old when the videos were taken, wrote:

> [S]he has been uprooted from her elementary school to another one (to protect her from malicious comments) and possibly to a new school system next year, she cannot just go around unescorted for our fear that someone else may know the situation and prey on her and she cannot live in the house she grew up in because people have been watching the house, blogging about the situation. She is in weekly counseling and has begun to have night terrors, sometimes 2 - 3 times a week. . . .
>
> She is too young and not quite mature enough to realize the extent of people looking at these and the impact that it will

Appellate Case: 16-3238    Page: 46    Date Filed: 03/08/2017 Entry ID: 4509754

have on her recovery and through her life. She knows that there are people viewing these and she wants to know where they are from when we get notifications because she fear[s] that they will know her if they live near us.

PSR at 13. The descriptions of ongoing harm suffered by other victims are similar. PSR at 6-19.

### 2. The sentencing hearing.

Furman refused to be interviewed by a probation officer. PSR ¶ 24. At his July 20, 2016, sentencing hearing, Furman claimed he was not the defendant in this case. 7/20/16 Sentencing Hr'g Tr. ("ST") 4-5. He used additional rhetoric associated with tax protestors, such as claiming he was appearing on behalf of "the defendant debtor" and that "the United States is a corporation." ST 4, 7. Furman never expressed any remorse for his crimes.

Through his attorney, Furman recognized he faced a statutory minimum sentence of life imprisonment plus ten years. DCD 115. Furman argued the mandatory life sentence required by § 3559(e) was categorically unconstitutional. DCD 115 at 1-4; ST 3. Furman did not argue the statute was unconstitutional as applied to him. DCD 115 at 2. Furman continued to deny he distributed or produced child pornography, and he denied sexually assaulting                              *Id.*

41

at 5.  Furman opposed any order of restitution for *Id.* at 6; ST 4, 9-10.

The government sought a sentence of life imprisonment plus 50 years.  DCD 116 at 2, 32.  It responded to Furman's constitutional argument, DCD 121, and asked the District Court to impose the life sentence based on the statutory minimum of § 3559(e) and, alternatively, based on its own determination under the § 3553(a) factors.  ST 10-11.

The District Court found Furman's base offense level would have been 44, but was capped at the maximum, 43.  PSR ¶¶ 65, 86.  The District Court determined Furman was a repeat and dangerous sex offender under Guideline § 4B1.5, which increased his criminal history category from II to V.  PSR ¶¶ 66, 80-81.  Furman's guideline sentence of imprisonment for counts 1 through 17 was life.  PSR 111.  His guideline range for supervised release was five years to life.  PSR ¶ 114.

The District Court rejected Furman's Eighth Amendment claim.  It sentenced Furman to life imprisonment on counts 1 through 13, the statutory minimum and maximum, to 480 months' imprisonment on

Appellate Case: 16-3238    Page: 48    Date Filed: 03/08/2017 Entry ID: 4509754

counts 14 through 16, the statutory maximum, and to 240 months on count 17, the statutory maximum. It imposed the prison sentences for counts 1 through 17 concurrently. The District Court sentenced Furman to 120 months' imprisonment on count 18, to run consecutively to the prison sentences for the other 17 counts. ST 16; DCD 126 at 2. It further imposed a life term of supervised release and required Furman to pay $3,000 restitution to                    ST 16, 20; DCD 126 at 3, 5. The District Court found the sentence was appropriate under the § 3553(a) sentencing factors.

Furman filed a timely notice of appeal on July 28, 2016. DCD 131.

Appellate Case: 16-3238    Page: 49    Date Filed: 03/08/2017 Entry ID: 4509754

## SUMMARY OF THE ARGUMENT

Defendant Rex Furman makes three claims on appeal.  First, he asserts the District Court abused its discretion by admitting evidence of Furman's 1999 conviction for assaulting                    when she was                    Furman does not dispute the admissibility of the evidence under Federal Rule of Evidence 414.  He contends, without discussion, that the evidence created a danger of unfair prejudice that substantially outweighed its probative value.  The evidence was admissible for all relevant purposes, including Furman's identity as the producer of child pornography, in which his fingers are shown touching                    genitals.  It was also admissible to show Furman's intent and motive for distributing and producing child pornography as well as to show his propensity for sexually assaulting his prepubescent female family members.  The District Court did not abuse its discretion in finding the limited Rule 414 evidence presented did not present a danger of unfair prejudice to Furman.

Second, Furman argues the evidence was insufficient for the jury to convict him of the distribution and production counts.  Furman's own statements show he knew he was distributing child pornography.

44

The forensic evidence further showed Furman was very experienced and familiar with the operation of file-sharing software and that he knowingly made child pornography available to others on the file-sharing networks by keeping child pornography files in his shared folder at all times.

With respect to the production offenses, Furman described in detail the video and photos he took of                on August 26, and he admitted his involvement in producing them. Furman's statements also showed he produced the September 3 photos. The September 3 photos were nearly identical in content to the August 26 photos, they were the next images taken on Furman's camera, the photos were taken shortly after midnight on a date when                was the only other person at Furman's house, and the photos were found in Furman's bedroom together with other computer discs of child pornography. The District Court correctly held the evidence was sufficient to support the jury's verdict.

Third, Furman argues all sentences under § 3559(e) are unconstitutional. A term-of-years sentencing statute has never been found to be categorically unconstitutional as applied to adults. The

45

2003 federal statute reflects a national consensus that prosecutors should have the ability to pursue mandatory life sentences for defendants who repeatedly sexually assault or sexually exploit children. Furman does not make any attempt to show Congress' determination contradicts established societal norms.

The District Court's judgment should be affirmed.

Appellate Case: 16-3238    Page: 52    Date Filed: 03/08/2017 Entry ID: 4509754

# ARGUMENT

## I. The District Court Did Not Abuse Its Discretion by Admitting Evidence of Furman's 1998 Sexual Assault Pursuant to Rule 414.

Defendant Rex Furman recognizes evidence of his 1998 conviction for molesting                           was admissible under Federal Rule of Evidence 414. He argues the evidence should have been excluded under Rule 403, however, because it was unfairly prejudicial. Furman Br. 17-19. Furman does not identify any unfair prejudice the Rule 414 evidence could have caused. The jury could properly consider the evidence for any relevant purpose, and Furman's conclusory claim should be rejected.

### A. Legal Framework.

Federal Rule of Evidence 414 provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a) "Child molestation" is defined in the rule to include possession, receipt, distribution, and production of child pornography where the victim is under the age of 14, which encompassed the conduct charged in each of the 18 counts against

47

Furman. *Id.* 414(d)(1), (2)(B) (charges under 18 U.S.C. ch. 110). Child molestation is also defined to include sexual assault of a child under the age of 14, which encompassed the conduct underlying Furman's 1981 and 1999 convictions. *Id.* 414(d)(1), (2)(C)-(D).

Rule 414 evidence "may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). While other prior bad act evidence generally cannot be introduced to show a defendant's propensity to commit similar acts, *see* Fed. R. Evid. 404(b), Rule 414 evidence can be introduced to show a defendant's propensity in child molestation cases, including child pornography cases. Rule 414 is a "general rule[] of admissibility in sexual assault and child molestation cases for evidence that the defendant has committed offenses of the same type on other occasions." *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997) (quoting 140 Cong. Rec. H8992 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)). Rule 414 evidence is "exceptionally probative" in child molestation cases "because it shows an unusual disposition of a defendant–a sexual or sado-sexual interest in children–that simply does not exist in ordinary people." *United States v. Bentley*, 475 F. Supp. 2d 852, 856 (N.D. Iowa 2007) (quoting Cong.

48

Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole)), *aff'd*, 561 F.3d 803 (8th Cir. 2009).

Rule 414 is intentionally broad. This Court has repeatedly recognized "the strong legislative judgment that evidence of sexual offenses should ordinarily be admissible." *United States v. Holy Bull*, 613 F.3d 871, 873 (8th Cir. 2010) (quoting *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001), and *LeCompte*, 131 F.3d at 769); *see also* 140 Cong. Rec. H8992 (daily ed. Aug. 21, 1994 (statement of Rep. Molinari)). Although the requirements of Rule 403 must still be met, in the context of Rule 414, the balancing test "must be applied to allow Rule 414 its intended effect." *LeCompte*, 131 F.3d at 769. "[T]he fact that evidence of prior acts suggests a propensity to molest children, 'is not *unfair* prejudice.'" *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) (quoting *Gabe*, 237 F.3d at 960).

This Court reviews a district court's decision to admit Rule 414 evidence, including its Rule 403 balancing determination, for an abuse of discretion. *United States v. Coutentos*, 651 F.3d 809, 819 (8th Cir. 2011); *LeCompte*, 131 F.3d at 769. Rule 414 evidence "is probative

when the prior bad acts were similar to those with which the defendant was charged." *Coutentos*, 651 F.3d at 819.

## B. The Rule 414 Evidence Was Relevant and Not Unfairly Prejudicial.

### 1. Relevance.

Furman does not contend the evidence of his 1998 sexual assault of                     was not probative in this case. The Rule 414 evidence was similar to the conduct underlying the production charges, which involved Furman's sexual contact with the genitals of                     around the time of

The fact that Furman sexually assaulted                     showed he had a sexual interest in prepubescent girls. It therefore helped demonstrate Furman's intent and motive in possessing, receiving, distributing, and producing child pornography. The 1998 Rule 414 evidence further helped prove Furman's identity as the person who produced the images charged in counts 1 through 13. *See Coutentos*, 651 F.3d at 819 (similarities of age, gender, and relationship to defendant); *United States v. Crow Eagle*, 705 F.3d 325, 327-28 (8th Cir. 2013) (similarities of age and relationship to defendant).

50

Furman's 1998 sexual assault of                also showed his propensity to sexually assault young, female family members, as was done in connection with the video and photos taken of

Although the government did not argue propensity to the jury in its closing or rebuttal arguments, the jury was free to consider the evidence for any relevant purpose. *E.g.*, *Bentley*, 561 F.3d at 815 ("propensity to molest young girls who are actual or virtual" family members).

Furman does not challenge the admission of the evidence of his 1981 sexual assault of                which involved Furman's touching the genitals of the                for his sexual gratification. The 1981 Rule 414 evidence reinforced the probative value to be drawn from the 1998 Rule 414 evidence. Moreover, the combination of to convictions showed Furman's propensity for sexually assaulting his prepubescent female family members extended for a period of at least 17 years.

51

## 2. Unfair prejudice.

The 1998 Rule 414 evidence was highly relevant and, therefore, prejudicial. As the District Court recognized, however, the prejudicial impact of the evidence was not unfair.

To help ensure the evidence did not exceed its proper bounds, the District Court asked the government to limit the amount of detail presented of the Rule 414 evidence. For the 1998 offense, the government elicited only the bare facts of the victim's age, gender, and relationship to Furman, and the specific sexual acts committed. *See United States v. Emmert*, 825 F.3d 906, 909 (8th Cir. 2016), *petition for cert. filed* (Feb. 1, 2017) (district court's limitation of Rule 414 evidence helped demonstrate proper exercise of its discretion); *United States v. Strong*, 826 F.3d 1109, 1113-14 (8th Cir. 2016), *petition for cert. filed* (Nov. 10, 2016) (testimony from investigating officer and victim).

Furman does not identify any specific risk of unfair prejudice the bare-bones evidence of his 1998 sexual assault of presented. He summarily alleges: "The evidence was such that the jury clearly ignored the lack of evidence when it came to the

52

production counts that allegedly involved minor relatives of Mr. Furman." Furman Br. 19.

Even if evidence of Furman's 1998 sexual assault of could have had some unfairly prejudicial impact at trial, which it did not, the impact could not have been significant in this case. As discussed previously, evidence of Furman's 1981 sexual assault of was presented to the jury, which Furman does not challenge. The 1998 offense had even greater relevance and less of a potential for unfair prejudice than did the 1981 offense. *See United States v. Luger*, 837 F.3d 870, 874 (8th Cir. 2016).

The District Court properly exercised its discretion in conducting the Rule 403 balancing assessment of the Rule 414 evidence in this case. Its ruling should be affirmed.

## II. The Evidence Was Sufficient for the Jury To Convict on Counts 1 Through 15.

Furman next contends there was insufficient evidence presented to the jury for it to convict him of distributing and producing child pornography as charged in counts 1 through 15. Furman Br. 13-17. Furman preserved the claims at trial. T 540-41. The District Court

Appellate Case: 16-3238    Page: 59    Date Filed: 03/08/2017 Entry ID: 4509754

correctly found the evidence was sufficient to support the jury's verdict on all 18 counts. DCD 92. Its ruling should be upheld.

### A. Legal Framework.

"A defendant challenging the sufficiency of the evidence confronts a high hurdle." *United States v. Bell*, 477 F.3d 607, 614 (8th Cir. 2007) (internal quotation marks omitted). "[T]his court reviews the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Scott Johnson*, 639 F.3d 433, 437 (8th Cir. 2011) (internal quotation marks omitted). In reviewing a sufficiency challenge, courts are "not to weigh evidence or consider the credibility of the witnesses, but rather to determine whether the Government has presented evidence on each element to support a jury verdict." *United States v. Chavez*, 230 F.3d 1089, 1091 (8th Cir. 2000). "[T]he presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a

reasonable doubt." *United States v. Robert Johnson*, 474 F.3d 1044, 1050 (8th Cir. 2007) (internal quotation marks omitted).

The District Court properly instructed the jury on the elements of the distribution and production crimes. In order to find Furman guilty of distributing child pornography, the jury was required to find beyond a reasonable doubt that:

1) Furman "knowingly distributed visual depictions . . . of child pornography;"

2) Furman "knew that the visual depictions were of a minor engaging in sexually explicit conduct;" and

3) "the visual depictions had" traveled in interstate commerce.

DCD 87 at 27 (Instruction No. 21).

In order to find Furman guilty of producing child pornography, the jury was required to find beyond a reasonable doubt that:

1) The minor shown in the images was under the age of 18;

2) Furman "knowingly used the minor to engage in sexually explicit conduct;"

3) Furman "acted with the purpose of producing a visual depiction of such conduct;" and

4) "the visual depiction was produced using materials" that had traveled in interstate commerce.

DCD 87 at 26 (Instruction No. 20).

Appellate Case: 16-3238    Page: 61    Date Filed: 03/08/2017 Entry ID: 4509754

### B. The Evidence of Furman's Distribution and Production of Child Pornography Was Sufficient.

#### 1. The distribution offenses, counts 14 and 15.

For the distribution counts, Furman claims the government failed to prove his distribution of the two child pornography files was done knowingly. Furman Br. 16-17. But Furman's own statements proved he knew he was distributing child pornography. He admits using file-sharing software and knowing that his shared files would be available to others on the file-sharing network. *Id.* at 16.

Furman argues on appeal that he thought he "cut everybody off" by moving the child pornography he downloaded out of his shared folders. *Id.* But Furman did not go that far in his interviews, saying, instead, "I don't leave it in the shared folder long enough for the . . . . I cut everybody off *usually*." Ex. 300a at 10 (emphasis added). Even that statement was false. The evidence showed Furman was sharing child pornography with others on either the Ares or Gnutella file-sharing network at all times from August 2013 through February 2014 and that he did not cut anybody off when they downloaded files from his shared folders.

Appellate Case: 16-3238    Page: 62    Date Filed: 03/08/2017 Entry ID: 4509754

Furman used at least one file-sharing program, Kazaa, before he started using the Ares file-sharing program to access the Ares network in December 2012. When Furman installed the Ares file-sharing software at that time, he knew how to choose his own folder for sharing files rather than the default folder. By the time Agent Giguere downloaded the count 15 video from Furman's shared folder in August 2013, Furman had been using his Ares file-sharing program, Furman's second such program, for eight months. By the time Officer Hanson downloaded the count 14 photo at the end of December 2013, Furman had been using either the Ares file-sharing software or the LimeShare Pro file-sharing program for over a year.

Furman was also very active in using the file-sharing programs and developed some advanced skills in using file-sharing programs to navigate file-sharing networks. Among other things, Furman knew how to go into the shared folders of other network users to download the entire collection of files in other users' shared folders.

Once he downloaded the files, Furman sorted through them, one at a time, before moving them to his user-created, non-shared folders. Furman left child pornography files in his shared folder for days or

Appellate Case: 16-3238    Page: 63    Date Filed: 03/08/2017 Entry ID: 4509754

weeks before moving them. Moreover, before he was done sorting through the files in his shared folder, Furman would download more child pornography. As a result, Furman always had child pornography available to others on the file-sharing network in his shared folder, sometimes over a hundred child pornography files at a time. Furman's claim that he "usually" moved files out of his shared folder, which was not a workable defense, was false.

Furman further admitted knowing that, by leaving files in his shared folders, he was making them available for others on the file-sharing networks to take. He said, "When you download if you don't take it outta the share file it shares it back . . . ." Ex. 300a at 10.

## 2. The production offenses, counts 1 through 13.

On appeal, Furman argues the government failed to show the images in exhibits 1 through 13 were the same images he admitted taking with                during his February 13, 2014, interview or the same images he admitted taking with                        in the September 18, 2014, interview. Furman Br. 15. He seems to claim the government therefore failed to prove he participated in the production of those images.

58

Furman's argument is largely beside the point. The fact that he may have taken additional videos and photos of genitals was not a defense to the production charges.

Regardless, the evidence showed Furman admitted in the February and September 2014 interviews taking the video and photos that were charged, at least those taken on August 26 and charged in counts 9 through 13. Furman admitted in the interviews that either he                     ook a close-up video and close-up photos of                     vaginas. Furman correctly recalled making the video and taking photos around the time of                     and that photos of                     were on the same mini-DVD as the close-up video and photos. *See* Exs. 9-13, 31-34, 152, 159. Furman also accurately described the close-up video he took of genitals, exhibit 13, explaining the video was about 3- to 5-seconds long. He said the video was taken just before the photos, exhibits 9 through 12, which also was true. Ex. 152. In addition, Furman correctly recalled the August 26 photos did not turn out well, as they were dark.

59

Moreover, the mini-DVD with the August 26 video and photos was found in a black DVD case on a shelf next to Furman's bed. The images were taken with Furman's camera at 10:00 p.m., and the only person staying with Furman that night. As well, Furman had a propensity for sexually assaulting his prepubescent female family members and had been convicted of doing so twice before, on occasions separated by 17 years. Furman also admitted looking at child pornography and had in his collection images that were similar to the video and photos he took of

On appeal, Furman further admits "some" of the photos charged in counts 1 through 13 were taken at Furman's home. He argues they "were clearly taken in the living area rather than the bedroom" of his home, citing testimony that the photos were taken on a cushioned chair. Furman Br. 15. The reference in Furman's brief is to exhibits 1 through 8, which, together with exhibits 19 through 22, were taken of          on September 3, 2012, while she was sleeping on a cushioned chair in some part of Furman's house.

The fact that Furman took, or participated in the taking of, the photos charged in counts 1 through 8, is further proven by his

60

admission to taking the video and photos charged in counts 9 through 13. The content in the images is essentially identical, except that on September 3, Furman also took photos of        face and her posed body, as well as a photo of her spread buttocks. The September 3 photos were taken on the same camera as the August 26 photos, they were taken in Furman's home, just after midnight, on a date when only       was living with him, and the photos were found on a mini-DVD in the same black CD case next to Furman's bed as the mini-DVD with the August 26 images. Furman told Agent Giguere in the September 18, 2012, interview that the officers had seized "both" of the CDs that had images of                          genitals.

Furman's false explanations for taking the video and photos further demonstrates he took them and did so for his sexual gratification. In February 2014, he said he and                   took images of                          genitals because they had yeast infections. In September, Furman changed his story, claiming he and        or he and                   took the video and photos because        had been accused of improperly touching        Neither explanation for taking the images was true.

61

In each instance, Furman also falsely claimed the fingers shown touching genitals were not his. Eventually, Furman admitted he "may have reached down" to touch genitals, an action he would not fail to remember.

The District Court's holding that the evidence supported the jury's verdict on counts 1 through 15 should be affirmed.

## III. The Mandatory Life Sentence of § 3559(e) Does Not Violate the Eighth Amendment.

Furman's final argument is that the mandatory life sentence required by § 3559(e) for repeat child sex offenders is categorically unconstitutional under the Eighth Amendment's Cruel and Unusual Punishments Clause. Furman Br. 19-23. The "Two Strikes and You're Out" sentencing provision was adopted as part of the PROTECT Act in 2003. Pub. L. No. 108-21, § 106(a), 117 Stat. 654. Furman does not identify any authority compelling, or even supporting, his claim, and it should be rejected.

### A. Legal Framework.

A sentence may violate the Eighth Amendment if it is "inherently barbaric" or if it punishes a person's status. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (handcuffing prisoner to hitching

post); *Robinson v. California*, 370 U.S. 660, 667 (1962) (prison sentence for being a narcotics addict). The Eighth Amendment also embodies a proportionality principle "that punishment for crime should be graduated and proportioned to [the] offense." *Graham v. Florida*, 560 U.S. 48, 59 (2010) (quoting *Weems v. United States*, 217 U.S. 359, 367 (1910)).

Eighth Amendment proportionality claims are evaluated in one of two ways. A sentence may be found to be unconstitutional "as applied" in a particular case. Alternatively, "categorical rules" may be adopted prohibiting a certain type of punishment for a particular class of defendants. *Graham*, 560 U.S. at 59. Furman does not contend § 3559(e) is unconstitutional as applied to the facts of this case. Instead, he argues the statute is categorically unconstitutional and cannot be applied to anyone.

In adopting "categorical rules" to define general proportionality limits for the Eighth Amendment, the Supreme Court first considers "'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue." *Graham*,

63

560 U.S. at 61 (quoting *Roper v. Simmons*, 543 U.S. 551 (2005)). The best evidence of "contemporary values is the legislation enacted by the country's legislatures." *Atkins v. Virginia*, 536 U.S. 304, 312 (2002). If it finds a national consensus against a sentencing practice, the Supreme Court exercises its own judgment to determine "whether the punishment in question violates the Constitution." *Graham*, 560 U.S. at 61.

Until 2010, the only sentence for which the Supreme Court created categorical rules under the Eighth Amendment was the death penalty. *E.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 437-38 (2008) (non-homicide offenses); *Simmons*, 543 U.S. at 578 (juveniles); *Atkins*, 536 U.S. at 312 (defendants with low intellectual functioning). Since then, the Supreme Court has created categorical rules in two cases limiting the imposition of life sentences without possibility of parole for juveniles. *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012) (life without parole for juveniles); *Graham*, 560 U.S. at 82 (life without parole for juveniles in non-homicide offenses).

Neither the Supreme Court nor this Court has found a term-of-years sentence to be categorically unconstitutional under the Eighth

Appellate Case: 16-3238      Page: 70      Date Filed: 03/08/2017 Entry ID: 4509754

Amendment as applied to adult offenders. *See United States v. Emmert*, 825 F.3d 906, 910 (8th Cir. 2016) (use of predicate offense committed as a juvenile to enhance child pornography possession sentence not categorically unconstitutional); *United States v. Reingold*, 731 F.3d 204, 213 (2d Cir. 2013).

This Court reviews the District Court's denial of the claim de novo. *Emmert*, 825 F.3d at 910.

## B.    Furman's Argument Has No Support in the Law.

Furman does not claim the mandatory life sentence of § 3559(e) violates the Eighth Amendment as applied to him. With two prior convictions for sexually abusing                    and for sexually abusing                    the life sentence imposed on Furman for sexually abusing

and recording the abuse on camera is certainly condign.

Furman instead challenges § 3559(e) on a categorical basis, asserting "the punishment cannot be constitutionally imposed . . . upon all twice-convicted individuals fitting within . . . § 3559(e)." Furman Br. 23. He presents no legal support for his argument. The provision was adopted by Congress in 2003, and Furman does not

identify any contrary "objective indicia of society's standards" that have developed since that time which run contrary to this national, legislative determination.

The closest Furman comes to relying on any legal authority for his claim is his citation to the Supreme Court decision in *Graham*, which found life sentences for juvenile defendants in non-homicide cases to violate the Eighth Amendment. Furman Br. 23 (citing *Graham*, 560 U.S. at 82). He states, without discussion, that a "similar rationale" requires the sentencing provision of § 3559(e) be struck down. The ruling in *Graham*, however, is based on the differences between juvenile and adult offenders, not their similarities. 560 U.S. at 68-75; *see Miller*, 132 S. Ct. at 2464-65 ("[C]hildren are constitutionally different from adults for purposes of sentencing.").

Furman also argues § 3559(e) is categorically unconstitutional because it might, in a hypothetical case, be found unconstitutional "as applied." Furman Br. at 21-22 ("A regime that countenances this kind of result violates the Eighth Amendment, not just in particular instances but rather categorically and in all applications."). This

66

unique approach is unsupported by any authority. Rather, it runs counter to, and would largely render moot, every Supreme Court precedent in which the standards for evaluating categorical claims are spelled out. *E.g.*, *Graham*, 560 U.S. at 60-61; *Kennedy*, 564 U.S. at 419-46.

In addition, because Furman is making a categorical challenge to § 3559(e), which applies to a range of crimes, any "comparison between the severity of the penalty and the gravity of the [particular] crime" is irrelevant. *Graham*, 560 U.S. at 61. It does not matter whether this Court would find a life sentence for a defendant convicted of raping a mentally incapacitated 16-year-old, after previously being convicted of raping another mentally incapacitated 16-year-old, grossly disproportionate to the offense. Whether a particular sentence might be found unconstitutional "as applied" in a specific, hypothetical instance does not inform the question of whether there is a national consensus for finding mandatory life sentences unsuitable for repeat offenders who sexually assault and exploit children.

This Court should reject Furman's categorical Eighth Amendment claim.

67

## CONCLUSION

For all the foregoing reasons, the District Court's judgment should be affirmed.

## CERTIFICATE OF COMPLIANCE

The undersigned attorney for the United States certifies this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32. The brief has 12,985 words, proportionally spaced. The brief was prepared using Microsoft Word 2010.

Dated: March 7, 2017
ANDREW M. LUGER
United States Attorney

/s/ Michael L. Cheever
By: Michael L. Cheever
Assistant U.S. Attorney

Attorneys for Appellee

68

# ADDENDUM OF APPELLEE

10/16/15 Pretrial Order addressing Rule 414, DCD 80 ................... A-1

10/23/15 Order denying Rule 29 motion, DCD 92.......................... A-12

Gov't Ex. 205:  3/2/99 Hennepin County Judgment for first
    degree criminal sexual conduct conviction............................ A-14

Gov't Ex. 206:  12/23/81 Wright County Judgment for fourth
    degree criminal sexual conduct conviction............................ A-15

Appellate Case: 16-3238     Page: 75     Date Filed: 03/08/2017 Entry ID: 4509754